# United States Court of Appeals
## For the First Circuit

No. 20-1694

JONALSON DOR,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Howard, and Gelpí,
<u>Circuit Judges</u>.

Edward Crane, with whom Philip L. Torrey, Crimmigration
Clinic, Harvard Law School, Shaiba Rather, Lena Melillo, and Katie
Quigley, Law Student Advocates, Crimmigration Clinic, Harvard Law
School, were on brief, for petitioner.
Andrew B. Insenga, Trial Attorney, U.S. Department of
Justice, Civil Division, with whom Jeffrey B. Clark, Acting
Assistant Attorney General, Civil Division, and Matthew B. George,
Senior Litigation Counsel, Office of Immigration Litigation, were
on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Merrick B. Garland has been substituted for former Attorney General
William P. Barr.

August 19, 2022

THOMPSON, **Circuit Judge**.  Petitioner, Jonalson Dor ("Dor"), seeks judicial review of a Board of Immigration Appeals ("BIA") decision affirming an immigration judge's ("IJ") decision to deny Dor's applications for relief from removal based on two marijuana offenses that the IJ and BIA found, for different reasons, to be "particularly serious" pursuant to 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii).  Before us, Dor argues that the BIA failed to conduct the appropriate analysis to reach its particularly-serious-crime conclusion.  The government urges that we shouldn't even reach Dor's substantive challenges due to his petition's jurisdictional defects, but even if we can find our way to the merits, the government maintains the BIA's decision was correct.

We find we have jurisdiction to review the petition. And, having undertaken that review, we remand to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

We begin our work by recounting the relevant parts of Dor's story and reciting the procedural history that brought him to us, pulling all relevant facts from the administrative record. See Adeyanju v. Garland, 27 F.4th 25, 31 (1st Cir. 2022) (citing Martínez-Pérez v. Sessions, 897 F.3d 33, 37 n.1 (1st Cir. 2018)).

Dor is a native and citizen of Haiti who was admitted to the United States as a legal permanent resident back in 2007.  But

in April 2019, the Department of Homeland Security initiated removal proceedings against Dor, charging him with removability as a non-citizen convicted of a criminal offense relating to a controlled substance.

After a hearing, the IJ found Dor removable based on two 2016 Massachusetts state court convictions:  one for distribution of $20 worth of marijuana, on May 20, and one for possession of what a police report says was "a large amount" (25 grams) of marijuana with the intent to distribute, on June 1.  Dor then filed for various forms of relief, including applications for asylum, statutory withholding of removal, and withholding of removal pursuant to the United Nations Convention Against Torture.[1]

In a written decision denying Dor's applications for relief, the IJ found Dor ineligible for the relief he was seeking because his convictions were particularly serious crimes.  By way of explanation, the IJ said that Dor had a "large amount of marijuana," and, under Matter of Y-L-, "all drug trafficking offenses are per se 'particularly serious crimes.'"  23 I. & N. Dec. 270, 276 (A.G. 2002).  The IJ observed that sometimes a drug-

---

[1] Dor also filed applications for cancellation of removal and voluntary departure.  Both were denied by the IJ, and Dor is not appealing those decisions.  Rather, as we've touched on and will explain, Dor's arguments target what he sees as the BIA's flawed analysis of the particularly-serious-crime bar to asylum (8 U.S.C. § 1158(b)(2)(A)(ii)) and withholding of removal (8 U.S.C. § 1231(b)(3)(B)(ii)).

- 4 -

trafficking offense is not a particularly serious crime -- this is true when the following rare and extraordinary circumstances are shown: (1) "a very small quantity of controlled substance"; (2) "a very modest amount of money paid for the drugs"; (3) "peripheral involvement . . . in the criminal activity"; (4) absence of any violence or threat thereof; (5) absence of organized crime; and (6) "absence of any adverse or harmful effect of the activity or transaction on juveniles." Id. at 276-77 (providing this list and instructing that all criteria must be met for a court to scrutinize the default setting that all drug-trafficking felonies are particularly serious crimes). In the IJ's view, though, Dor could not even satisfy the first of those required factors since he was found with a "large amount of loose green leafy vegetable matter believed to be marijuana." Thus the IJ ordered Dor removed to Haiti.

Dor timely appealed to the BIA, arguing that the presumption set forth in Matter of Y-L- that "all drug trafficking offenses are per se 'particularly serious crimes'" applies only when the offenses are aggravated felonies, and his convictions were not. So, according to Dor, the BIA should remand the matter to the IJ to instead apply the multi-factor test for convictions that are not aggravated felonies, as set forth in Matter of Frentescu, to determine whether either of his convictions amounted to a particularly serious crime. See 18 I. & N. Dec. 244, 247

(BIA 1982) [hereinafter "Frentescu"] (listing "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community" as the relevant factors to consider for this analysis).

The BIA agreed with Dor that the presumption in Matter of Y-L- that "all drug trafficking offenses are per se 'particularly serious crimes'" should not have been applied to his case because his convictions were not aggravated felonies.  But instead of remanding to the IJ on this basis, the BIA observed that "whether an offense is a particularly serious crime is a question of law [it would] review de novo."  The BIA, citing Frentescu (laying out relevant factors to make the particularly-serious-crime determination) and Matter of N-A-M-, 24 I. & N. Dec. 336, 342 (BIA 2007) (same, and also instructing the immigration agencies to look at the elements of the statute of conviction to see whether the elements of the offense bring the crime into the particularly-serious-crime category), then indicated that "[w]here, as in the instant case, a conviction is not for an aggravated felony . . . , [the BIA] examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the case."  "If the elements of the offense are found to potentially bring it within the ambit of a

particularly serious crime," the BIA went on, again citing Matter of N-A-M-, "all reliable information that is relevant to the determination may be considered."

In the paragraph critical to Dor's appeal to this court (we'll lay it out in full later), the BIA stated that "[t]he nature, type, and circumstances of [Dor's] offenses are all indicative of a particularly serious crime," recited a number of the IJ's findings regarding both the May 20 and June 1 offenses, and then, "[f]or these reasons," upheld "the [IJ's] determination that [Dor was] ineligible for asylum and withholding of removal for having been convicted of a particularly serious crime."

Believing the BIA committed a variety of errors, Dor filed this timely petition for review, and we granted his subsequent motion to stay his removal.

**JURISDICTION**

We start by examining our jurisdiction, meaning we'll save for later our sum-up of Dor's merits arguments regarding the BIA's missteps. Our jurisdiction over petitions for review of BIA decisions is constrained by statute. And indeed, the government maintains we shouldn't reach any of Dor's contentions because 8 U.S.C. § 1252(a)(2)(C) precludes judicial review and, what's more, Dor failed to exhaust all administrative remedies. Below, we take these -- and Dor's responses to each -- in turn.

### Section 1252 and Our Jurisdiction

Generally, we lack jurisdiction to review a final order of removal when the respondent has committed a criminal offense, see id. § 1252(a)(2)(C) (the so-called "criminal bar"), but, that provision notwithstanding, we do have jurisdiction over petitions that raise "constitutional claims or questions of law," id. § 1252(a)(2)(D) (the "limited review provision"). The phrase "questions of law," as used in § 1252(a)(2)(D), is not limited to pure questions of law -- it also "includes the application of a legal standard to undisputed or established facts." Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1068, 1072 (2020); Valerio-Ramirez v. Sessions, 882 F.3d 289, 295 (1st Cir. 2018) (concluding that the court had jurisdiction, in removal proceedings, to address questions of law raised by petitions for review, "includ[ing] what standard governs 'particularly serious crime' determinations for non-aggravated felons in deportation proceedings"). And not only can we exercise jurisdiction when a petition raises an argument about such application-of-a-legal-standard questions of law, but we can do so when a petition challenges the sufficiency of that application -- i.e., the adequacy of the reasoning. See, e.g., Berhe v. Gonzales, 464 F.3d 74, 87 (1st Cir. 2006) (instructing that "the adequacy of the [BIA]'s reasoning is a legal question that we may review").

In asserting that the criminal bar precludes jurisdiction here, the government nods at our precedent (Valerio-Ramirez, specifically) and agrees that we would not lack jurisdiction over "alleged legal errors raised about a particularly serious crime[]" analysis. But it posits that Dor only "provides a scattershot of allegations that do not identify the nature of the error," so really, according to the government, Dor is just asking us to reweigh facts to find his crime was not particularly serious, and reweighing facts, the government urges, is not something we can do.[2]

A close review of his arguments confirms that this is not what Dor is doing. Indeed, this is not a situation in which a factual challenge is masquerading as a legal one. See, e.g., Tacuri-Tacuri v. Garland, 998 F.3d 466, 471 (1st Cir. 2021) (observing, in a cancellation of removal case, that "styling a factual challenge as a constitutional or legal error . . . does not 'transform an unreviewable issue of fact into a reviewable issue of law'" (quoting Alvarado v. Holder, 743 F.3d 271, 275 (1st

_____

[2] In its opening brief, the government leans on Bare v. Barr, 975 F.3d 952, 970 (9th Cir. 2020), to support its criminal-bar jurisdictional arguments. As the government later acknowledges in a Federal Rule of Appellate Procedure 28(j) submission, that case concerns the application of the discretionary bar, § 1252(a)(2)(B). After recognizing its mistaken reliance on that case, though, the government uses the Rule 28(j) moment to reiterate its argument that Dor is basically asking us to reweigh facts.

Cir. 2014))). When Dor points, for instance, to the relative leniency of his sentence, or the fact that the "large amount" of marijuana as described in the police report really only amounted to 25 grams, he is not asking us to reweigh these facts to then find his crime wasn't particularly serious. Rather, Dor's reference to such facts and circumstances is designed to buttress his argument that the BIA's analysis -- its reasoning and application of the Frentescu test to the facts to which Dor is pointing -- was either entirely absent or, at a minimum, deficiently explained. Dor says this all comes together to present a classic example of a question of law over which we retain jurisdiction to consider even when the criminal bar would otherwise apply.

We agree. In view of guiding precedent, and with Dor clearly seeking our review of the BIA's Frentescu application and adequacy of its discussion, the petition presents questions of law for our determination. See Guerrero-Lasprilla, 140 S. Ct. at 1068; Valerio-Ramirez, 882 F.3d at 295; Berhe, 464 F.3d at 86-87. Thus, the criminal bar does not limit our jurisdiction.

**Exhaustion**

And then there's exhaustion, which is yet another piece of the jurisdictional puzzle.

We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to

- 10 -

the alien as of right." 8 U.S.C. § 1252(d)(1). "This exhaustion requirement is jurisdictional; that is, it constitutes a limitation on our power of review" -- a petitioner "who neglects to present an issue to the BIA fails to exhaust his administrative remedies with respect to that issue and, thus, places it beyond our jurisdictional reach." Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013). In other words, "theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order." Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004).

The government tells us that "essentially every argument" Dor advances is unexhausted. This is so, according to the government, because Dor now makes "legalistic claims that the [BIA] did not and could not address" because his "brief to the [BIA] failed to raise any of the arguments he now raises." Instead, the government argues, he "asked [the BIA] for remand without presenting any arguments on the merits," leaving the BIA "to guess" at what his argument would be relative to how Frentescu's analysis should go in his case. "The consequence of [this] failure to raise to the [BIA] any [of] the merits of the particular [sic] serious crime issue is that he did not exhaust most of his claims."

Dor rejoins that, based on the IJ's misanalysis under Matter of Y-L-, he asked the BIA to remand so the IJ could conduct

- 11 -

a proper Frentescu-factor assessment to determine whether he had committed a particularly serious crime.  But the BIA undertook its own Frentescu discussion sua sponte, which he says he cannot be expected to have foreseen, and the BIA's choice to tackle the matter on the merits exhausts the issue anyway.

"[A]n issue is exhausted when it has been squarely presented to and squarely addressed by the agency, regardless of which party raised the issue (or, indeed, even if the agency raised it sua sponte)." Mazariegos-Paiz, 734 F.3d at 63; see also García-Cruz v. Sessions, 858 F.3d 1, 8 (1st Cir. 2017) ("Even if an issue was not raised by a party, the issue is exhausted if the BIA addresses the issue on the merits."); Velerio-Ramirez v. Lynch, 808 F.3d 111, 113 (1st Cir. 2015) ("We reject the government's position that the petitioner has precluded remand because she failed to exhaust the issue of applicable law; the BIA itself raised the issue, and that suffices."); Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st Cir. 2015) ("The exhaustion requirement is satisfied where . . . the agency chooses to address the merits of a particular issue, regardless of whether the alien raised that issue." (alteration in original) (quoting Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015))).

Indeed,

> by addressing an issue on the merits, an agency is expressing its judgment as to what it considers to be a sufficiently developed issue.  When a court defers to

that exhaustion-related judgment, it avoids judicial intrusion into the domain that Congress has delegated to the agency. We think it follows that if the BIA deems an issue sufficiently presented to warrant full-dress consideration on the merits, a court should not second-guess that determination but, rather, should agree that such consideration exhausts the issue.

Mazariegos-Paiz, 734 F.3d at 63 (citations omitted).

In view of these important carveouts from the usual exhaustion constraints and the policy driving it all, and on the facts of Dor's case, it is clear exhaustion does not operate as a bar to our review. We're aware that Dor did raise the issue of the IJ's use of the wrong legal test -- remember, Dor appealed the IJ's decision, arguing that the IJ applied the wrong legal standard, then identifying the correct one -- but he sought remand so the IJ could reassess his claims for relief using the proper legal framework. In specifically seeking remand as the remedy to the IJ's misstep, Dor reasonably followed the pathway set forth in the BIA's own precedent, arguing that the BIA had remanded when confronted with identical misanalysis. See Brief for Respondent on Appeal to the BIA at 2-3, In re Dor (Mar. 9, 2020) (relying on Matter of J-F-B- (BIA Sept. 13, 2018) (unpublished), where the IJ incorrectly found a per se particularly serious crime under Matter of Y-L-, 23 I. & N. Dec at 270, and the BIA remanded because Matter of Y-L- was inapplicable (there had been no aggravated felony conviction) and the IJ needed to conduct its particularly-serious-crime analysis by applying Matter of N-A-M- and Frentescu). The

- 13 -

BIA, though, sua sponte opted to forgo remand and took it upon itself to tackle the appropriate particularly-serious-crime discussion. In other words, the BIA considered the issue sufficiently developed such that it could handle it itself, giving it de novo consideration on the merits. This "exhausts the issue." Mazariegos-Paiz, 734 F.3d at 63.

And so, where, as here and in Mazariegos-Paiz, "the BIA undertook a developed discussion of the merits-related issues that the petitioner now seeks to raise," "this court has jurisdiction to consider those issues notwithstanding the fact that" the petitioner isn't the one who asked the BIA to decide them. Id.

Equipped with jurisdiction, we move to the substance of Dor's appellate contentions.

**THE MERITS**

No one disputes that the BIA was right to identify Frentescu's case-by-case inquiry as the test to be applied to tease out whether Dor's crimes were particularly serious as a matter of law. It's what happened after the BIA identified Frentescu as the appropriate legal test that forms the basis for today's dispute.

Dor says the BIA erred when it didn't actually apply Frentescu or adequately explain its reasoning when it addressed the particularly-serious-crime determination -- it just listed some IJ factual findings and concluded "particularly serious," never getting around to the "why" of that conclusory determination.

- 14 -

In particular, Dor posits that the BIA committed error and/or abused its discretion (we'll get to the standard of review in a minute) by: cumulatively conflating the circumstances of his two convictions to find a particularly serious crime when it "made no attempt to independently examine the underlying allegations of each offense"; failing to consider whether either offense as a standalone could bring it within the particularly-serious-crime category; neglecting to weigh the lenient sentence imposed on Dor; and ignoring critical facts relative to the underlying circumstances of his offense conduct (no intent to harm anyone, for example) while impermissibly looking at unrelated offenses (considering the June 1 offense when scrutinizing the May 20 offense and vice versa).

The government responds by insisting that the BIA reviewed the offenses separately and sufficiently analyzed both to support a particularly-serious-crime determination as to each. The government also urges that the BIA did consider the relevant factors (like the nature of Dor's crimes), its emphasis was on the nature of Dor's trafficking as particularly serious, and any confusion about the "large amount" of marijuana is "a red herring" that presumes a faulty reading of the BIA decision.[3]

---

[3] The government's brief focused almost exclusively on jurisdiction and exhaustion, and these buzzwords pop up even in the government's short merits discussion as reasons we should not be taken in by the substance of Dor's arguments. But we're not

In the normal course, we review only the decision of the BIA (unless the BIA defers to or adopts the IJ's reasoning, that is, in which case we'd review those portions of the IJ's analysis, too). See, e.g., Hasan v. Holder, 673 F.3d 26, 33 (1st Cir. 2012). Here, as we know, the BIA rejected the IJ's reasoning and supplied its own, so we're just looking at the BIA's decision today. As we undertake that examination, we're mindful that "[w]e review for abuse of discretion the BIA's assessment and weighing of the Frentescu factors, including its conclusion that the crime of conviction was 'particularly serious.'" Valerio-Ramirez, 882 F.3d at 297. "Under this deferential standard, we will uphold the determination unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Id. (cleaned up). "We also review legal questions de novo, while affording deference to the BIA's interpretations of the statutes and regulations it administers." Id.

Dor is right that we need only be convinced on one of his appellate contentions to send it back to the BIA for further proceedings. More than one of his arguments has teeth, but there's no need to explore the nuances of each when a particular path to remand is readily apparent to us: The BIA's decision did not apply

persuaded. For the reasons we've already explained, we view Dor's appellate contentions as ripe for our discussion.

- 16 -

Frentescu to the facts, and even to the extent it could be argued the BIA did conduct such an application by listing off facts, the conclusion that followed was bereft of any meaningful or rational explanation.

Let's begin with what Frentescu demands. "In judging the seriousness of a crime" under Frentescu, the agency must "look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." 18 I. & N. Dec. at 247. Additionally, "[c]rimes against persons are more likely to be categorized as 'particularly serious crimes.'" Id. "Nevertheless, we recognize that there may be instances where crimes (or a crime) against property will be considered as such crimes." Id.

The BIA singled out Frentescu's "the nature of the conviction, the circumstances and underlying facts of the conviction, [and] the type of sentence imposed" language. To appreciate precisely what the BIA did next -- and what it did not do -- we reproduce the paragraph in its entirety (cleaned up a little, with exhibit and IJ decision citations omitted):

> The nature, type, and circumstances of the respondent's offenses are all indicative of a particularly serious crime. The [IJ] cited the language of the statute of conviction in her decision. See Mass. Gen. Laws Ch. 94C § 32C(a) (2016). The [IJ] noted that the respondent was

found to have a "large amount of loose green leafy vegetable matter believed to be marijuana contained in a large plastic powder drink container." During the same incident on June 1, 2016, the [IJ] stated that police officers also found a digital scale and "a large amount of US Currency with various denominations bundled together." Police officers had observed the respondent smoking inside a park, and when the officers approached the respondent, the respondent "quickly stood up and began to walk away." The police officers caught up to the respondent and "observed a brown colored tobacco leaf in his hand and an odor of burnt marijuana emanating from it." In a prior incident on May 20, 2016, a police officer observed the respondent "reach into a tan color bag and retrieve an item with his right hand." The officer then observed the respondent "place the item in his left hand and have a hand to hand exchange with [a buyer] as [the buyer] was holding and gave [the respondent] US currency with his right hand." The officers then approached the buyer, who admitted to buying marijuana from the respondent. On December 12, 2016, the respondent pled guilty to possession with intent to distribute a class D controlled substance and distribution of a class D controlled substance in violation of Massachusetts law.

This is immediately followed by a new paragraph that states: "For these reasons, we uphold the [IJ's] determination that the respondent is ineligible for asylum and withholding of removal for having been convicted of a particularly serious crime," and "[t]he respondent's conviction for a particularly serious crime also precludes him from being granted withholding of removal under the Convention Against Torture." The decision then segues to deferral of removal (not on appeal).

This is an insufficient and unclear assessment and weighing of the Frentescu factors that amounts to a deficient application of the legal standard. Merely identifying the

- 18 -

appropriate legal test and some of the relevant factors to be assessed, saying the test is indicative of a certain conclusion, then listing certain facts as found by the IJ, does not constitute an application of law to facts. Compare Valerio-Ramirez, 882 F.3d at 298-99 (affirming the agencies' decisions denying relief when the IJ and BIA carefully applied Frentescu, weighing the nature and circumstances that brought the crime within the ambit of particularly serious crimes, examining the mandatory minimum sentence imposed and bases for its imposition, and conducting a detailed inquiry into how the crime showcased the danger to the community posed by the petitioner).[4]  There is no way to discern which facts go to which element, no hint as to what amount of weight was attributed to each factor, and no indication whether the BIA considered Frentescu's directive to consider the type of sentence Dor got or ("most importantly") whether Dor would pose a

---

[4] Compare also Nethagani v. Mukasey, 532 F.3d 150, 155 (2d Cir. 2008) (upholding the BIA's particularly-serious-crime determination on a reckless endangerment conviction because it had properly applied Frentescu, considering:  that the conviction involved behavior that "could end a human life," that firing a pistol into the air (as the petitioner had done) involves "high potential for serious or fatal harm to the victim or an innocent bystander," the "not insignificant" sentence the petitioner received, and the petitioner's own version of events); Arbid v. Holder, 700 F.3d 379, 385 (9th Cir. 2012) (per curiam) (upholding the BIA's particularly-serious-crime conclusion pursuant to its application of the Frentescu guideposts when the BIA had highlighted the petitioner's "substantial" sixteen-month imprisonment term and apparent lack of remorse, on top of the $650,000 restitution order and complex nature of the petitioner's scheme).

danger to the community given the nature of his crime. And an overarching issue here, as Dor points out throughout his papers, is that this factual recitation bleeds from one offense's fact pattern straight into the other, leaving us without any clarity as to what role (if any) any given fact was playing in the BIA's purportedly Frentescu-guided determination.

We are cognizant that Frentescu directs IJs and the BIA to "look" to these factors. That does not amount to a hard-and-fast requirement that the IJ or BIA conduct an exhaustive analysis of every facet of every factor as applied to a petitioner's case. But it does prescribe a case-specific inquiry that demands some application and analysis, and here, the application of the factors to the facts of Dor's case is entirely deficient.

Even if this constituted an acceptable application of Frentescu, we could not conclude the BIA provided an explanation of its conclusion, let alone a rational one. See Valerio-Ramirez, 882 F.3d at 297 (finding the decision as to the particularly-serious-crime determination was not an abuse of discretion when the agencies analyzed comparable case law alongside the petitioner's case, and the BIA highlighted the IJ's detailed description of the crime's complexity, scope, and duration); see also Dominguez v. Barr, 975 F.3d 725, 741 (9th Cir. 2020) (upholding the BIA's individualized particularly-serious-crime analysis when it "provided a reasoned explanation" in view of the

<u>Frentescu</u> factors, specifically in that it considered several facts underlying the conviction, such as the marijuana-growing operation setup in the petitioner's home (replete with special lights and approximately fifty potted plants), plus the BIA's notation of the IJ's adverse credibility finding and its consideration of the nature of the conviction (observing generally that drug-trafficking crimes can have "devastating effects")). In lieu of any explanation as to <u>how</u> the <u>Frentescu</u> elements guided the BIA to its outcome, what we have is a list of facts from the record kicked off with a confusing combination of singular and plural bound up together in the BIA's conclusory statement that the nature, type, and circumstances of Dor's "offenses <u>are all</u> indicative of <u>a</u> particularly serious crime." (Emphases added.)

Then there's the reference to what the police report described as the "large amount" of marijuana Dor had in his possession during the June 1 offense. This may have been intended to be an explanation by the BIA as to why this was a particularly serious crime. But it's unclear, and it does not even seem to be an accurate description. Indeed, compare the actual drug quantity (25 grams) to the 30 grams the BIA itself has offered up as the baseline "small amount" of marijuana, at least in other contexts. <u>See</u> <u>Matter of Castro Rodriguez</u>, 25 I. & N. Dec. 698, 703 (BIA 2012) (reasoning that "30 grams or less may, in general, serve as a useful guidepost in determining whether an amount is 'small'");

see also Moncrieffe v. Holder, 569 U.S. 184, 194 n.7 (2013) (recognizing that the BIA has used 30 grams as a guide to determine whether an amount of marijuana is small). It is problematic that the BIA would choose to rely on the assessment of the on-scene police officer that Dor was caught with a "large amount" of marijuana when the actual 25-gram figure was readily available in the same police report. It is similarly troubling that the BIA would thus conclude that 25 grams constitutes a "large amount" of marijuana when it has indicated 30 grams or less is the guidepost for discerning a "small" amount. See Adeyanju, 27 F.4th at 51 (stating that the BIA "abuses its discretion if it 'inexplicably departs from established policies,' including its own precedents" (quoting Benitez v. Wilkinson, 987 F.3d 46, 52 (1st Cir. 2021))).

To the extent the trafficking component of Dor's offenses (as opposed to the amount in Dor's possession) is what drove the BIA's particularly-serious-crime conclusion, that is likewise unclear and insufficiently explained. True, the BIA's discussion was not solely focused on the drug quantity involved. But by the same token, it also wasn't solely focused on trafficking -- the 25-gram quantity is the very first fact the BIA cited. And we're mindful that, as a practical matter, drug quantity can play a role when it comes time to evaluate the severity of a trafficking offense. See, e.g., Marquez v. Garland, 856 F. App'x 719, 723 (9th Cir. 2021) (affirming the IJ and BIA's particularly-serious-

crime determination under Frentescu when the trafficking conviction was for a "staggering" amount of marijuana (200 pounds) that would be distributed "across broad swaths of the American landscape"); and see generally Matter of Y-L-, 23 I. & N. Dec. at 276 (explaining (in seminal case in aggravated-felony context) that drug trafficking is particularly serious, but that "particularly serious" presumption can be rebutted by showing, among other things, that only "a very small quantity of controlled substance" was involved). But again, we simply cannot know what the reasoning was here because it was not explained.

Given our familiarity with the record at this point, we are prompted to note that it is not at all apparent to us how an application of the Frentescu factors to Dor's case would lead to a particularly-serious-crime determination. For instance, consider again the June 1 incident -- the BIA relied on a police officer's assessment that Dor had a "large amount" of marijuana on him, but this on-the-scene appraisal by an officer is largely irrelevant to an immigration-law-driven determination that a crime is particularly serious pursuant to the guiding statutes, especially when the actual amount (25 grams, a small amount) is available. See Matter of Castro Rodriguez, 25 I. & N. at 703; Moncrieffe, 569 U.S. at 194 n.7. Consider, too, that while the BIA identified the type of sentence imposed as a Frentescu factor but never mentioned (or weighed) Dor's sentences, we observe that

Dor received lenient sentences with respect to both offenses (a two-year probation and a one-year suspended sentence that never went into effect since Dor completed a violation-free probation period).

As to Dor's involvement in trafficking as part of the calculus here, based on the amount in question, and again on the face of this record, this characterization seems ambitious. The May 20 offense officers observed Dor sell "20 bucks[' worth]" of marijuana to another individual; the June 1 incident revealed Dor had in his possession a digital scale, a large amount of U.S. currency, and 25 grams of marijuana.

Bottom line: The BIA's particularly-serious-crime conclusion is devoid of any actual application of the Frentescu factors, and even if we considered it a solid application of the law to Dor's case, we still do not have a sufficiently rational explanation of the BIA's particularly-serious-crime conclusion as to Dor's minor marijuana offenses, and a rational explanation is necessary to ensure Dor was appropriately precluded from obtaining the humanitarian relief he seeks.

## CONCLUSION

For the foregoing reasons, we grant Dor's petition and remand for further proceedings consistent with this opinion.

- 24 -