# United States Court of Appeals
## For the First Circuit

No. 25-1278

JONALSON DOR,

Petitioner,

v.

PAMELA J. BONDI, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

Ethan R. Horowitz, with whom Claire Maguire was on brief, for petitioner.

Andrew B. Insenga, Trial Attorney, Office of Immigration Litigation, with whom Sheri R. Glaser, Acting Assistant Director, Office of Immigration Litigation, and Brett A. Shumate, Assistant Attorney General, Civil Division, U.S. Department of Justice, were on brief, for respondent.

December 1, 2025

**MONTECALVO, Circuit Judge.** Petitioner Jonalson Dor ("Dor") seeks review of the Board of Immigration Appeals' ("BIA") March 18, 2025 decision upholding his removal order. Dor's petition concerns whether his August 2018 Massachusetts marijuana conviction constitutes a "controlled substance" violation under section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i). That provision, in turn, references the federal definition of a "controlled substance," as defined by the Controlled Substances Act ("CSA") at 21 U.S.C. § 802.[1]

This appeal presents the following question: when evaluating whether a noncitizen's state criminal conviction renders them deportable for a controlled substance offense, must courts refer to the definition of a controlled substance in the

---

[1] Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (1970), as part of a sweeping effort to standardize the regulation of federally controlled substances. See Joanna R. Lampe, Cong. Rsch. Serv., R45948, The Controlled Substances Act (CSA): A Legal Overview for the 119th Congress 2 (2025). Title II of that Act contains the CSA. See id. The CSA defines a "controlled substance" at 21 U.S.C. § 802 as "a drug or other substance, or immediate precursor" that is included in one of its five drug schedules (schedules I to V), found in § 812. The INA provision at issue here references the CSA's "definitions" section, and therefore we refer mainly to CSA "definitions." See INA § 237(a)(2)(B)(i) (referencing 21 U.S.C. § 802). But we point out the distinction between these two sections because courts often refer to the CSA's drug definitions and its schedules interchangeably, as reflected in some sources cited in this opinion.

CSA as the CSA existed at the time of the individual's conviction, or at the time of their removal proceedings? For the following reasons, we join the five other circuits to have considered this question and adopt the rule that the relevant CSA definition is the definition that existed at the time of conviction. Because Dor's August 2018 Massachusetts marijuana conviction constitutes a categorical match with the federal definition as it existed at the time of his conviction, we deny Dor's petition.

## I. Background

We begin by recounting how this appeal came before us, drawing the facts from the administrative record. Adeyanju v. Garland, 27 F.4th 25, 31 (1st Cir. 2022) (citing Martínez-Pérez v. Sessions, 897 F.3d 33, 37 n.1 (1st Cir. 2018)).

### A. Dor's August 2018 Massachusetts Marijuana Conviction

Jonalson Dor is a native and citizen of Haiti. He was admitted to the United States as a lawful permanent resident on or about April 23, 2007. On August 6, 2018, Dor pled guilty in state court to possession of marijuana with the intent to distribute under chapter 94C, section 32C(a) of the Massachusetts General Laws.

### B. December 2018 Amendment to the CSA

At the time of Dor's August 2018 conviction, both Massachusetts law and the CSA included "hemp" in the definition of

"marijuana."[2]  See Mass. Gen. Laws ch. 94C, § 1; 21 U.S.C. § 802(16) (Supp. 2017).   That changed when Congress amended the CSA, effective December 2018, to exclude "hemp" from the "marijuana" definition.   Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 12619(a)(2)(B), 132 Stat. 4490, 5018 (codified as amended at 21 U.S.C. § 802(16)).

## C. Dor's Removal Proceedings

In 2019, the Department of Homeland Security ("DHS") initiated removal proceedings against Dor, charging him as removable under section 237(a)(2)(B)(i) of the INA for having been convicted of a controlled substance violation.   DHS based that charge, initially, on two of Dor's marijuana offenses from 2016.

An immigration judge ("IJ") ordered Dor removed, and on appeal, the BIA upheld that order on the grounds that Dor's 2016 marijuana convictions constituted "particularly serious crimes" that made him ineligible for relief.  See Dor v. Garland, 46 F.4th 38, 41-42 (1st Cir. 2022).   In 2022, he sought our review for the first time in Dor v. Garland, challenging the BIA's decision.  See id.   We granted Dor's petition and remanded to the BIA for proceedings consistent with our opinion.  Id. at 42.

---

[2]  The Massachusetts statute refers to this substance as "marihuana," while the federal definition refers to both "marihuana" and "marijuana."   For consistency throughout this opinion, we refer to this substance as "marijuana."

Since then, Dor's 2016 marijuana convictions have been vacated, and the parties agree that those convictions are not at issue in this appeal. But Dor's legal battle continued, when on March 13, 2023, DHS amended its charges of removability against Dor. It added his 2018 Massachusetts marijuana conviction as the new basis for Dor's alleged removability on the same controlled substance grounds as before.

Following that amendment, Dor sought to terminate his removal proceedings. In a November 15, 2023 motion before the Boston Immigration Court, Dor argued that he was not removable because the sole conviction now sustaining removability -- his August 2018 Massachusetts marijuana conviction -- did not constitute a controlled substance offense as defined in the CSA. He applied the "categorical approach," an analysis which compares state and federal law to determine whether there is a "categorical match."[3] Dor argued that the Massachusetts definition of marijuana, which included some forms of "hemp," was broader than the federal definition, which did not criminalize "hemp" at all.[4]

---

[3] In broad terms, a categorical match exists if the federal law at issue encompasses the "least culpable conduct" criminalized by the state statute of conviction. See Boulanger v. United States, 978 F.3d 24, 28 (1st Cir. 2020) (explaining the categorical approach in a sentencing enhancement case). But if the state statute criminalizes more conduct than the federal law, it is considered "overbroad" and therefore not a categorical match.

[4] Before the IJ, Dor noted that Massachusetts defined marijuana to exclude "industrial hemp as defined in section 116 of chapter 128" of the Massachusetts General Laws. (Citing Mass.

Because his Massachusetts statute of conviction covered substances that the CSA did not, Dor argued that there was no categorical match, and thus DHS could not sustain its charge of removability. In support of his motion, Dor included the CSA's definitions at 21 U.S.C. § 802 as an exhibit, which indicated that the federal "marijuana" definition did not include "hemp." Dor did not explicitly argue for the IJ to consider the version of the CSA in effect at the time of his removal proceedings, rather than an earlier version. Yet by referring to the version that was effective at the time he moved to terminate proceedings, in practice, he applied a time of removal approach.

The IJ disagreed with Dor's arguments. In its July 11, 2024 denial of Dor's motion to terminate, the immigration court concluded that the applicable federal drug schedule was the one in place at the time of a noncitizen respondent's criminal conviction.[5] The IJ found, as it pertained to marijuana, that the Massachusetts drug schedule was a categorical match with the federal drug schedule that existed at the time of Dor's August

_____

Gen. Laws ch. 94C, § 1) (emphasis added). Because section 116 defines both "hemp" and "industrial hemp," Dor argued that non-industrial hemp was "criminalized under [his] statute of conviction," and therefore overbroad compared to the CSA, which did not criminalize hemp in any form.

[5] As discussed, supra note 1, this is an instance where a court referred to the drug schedules when discussing a change in the definitions of those drugs.

2018 conviction.  The IJ therefore concluded that DHS had sustained the charge of removability and ordered Dor removed.

Dor timely appealed to the BIA.  On March 18, 2025, the BIA determined that the IJ properly decided Dor's removability and dismissed his appeal.  It agreed "that the time of conviction [was] the relevant point" for determining removability for a controlled substance offense, noting that the four appeals courts to have addressed the issue had adopted the same approach.[6]  The Board reasoned that it traditionally considered the time of conviction -- and not the "current state of the criminal law when a case comes before us in the course of (often protracted) immigration proceedings" -- when determining immigration consequences of crimes.  It expressed concern over the "serious notice and retroactivity problems" implied by Dor's time of removal rule, which it noted would make immigration consequences for state convictions "unpredictable and unfixed in time."  And finally, it rejected Dor's "one-way ratchet" argument aimed at assuaging those retroactivity concerns.  Under this approach, the time of removal rule would apply "except when doing so would cause detriment to the respondent or defy his reliance-based expectations," functioning as a "one-way ratchet."  This, the Board reasoned,

_____

    [6] Just one day after the BIA's March 18, 2025 decision, the United States Court of Appeals for the Eighth Circuit became the fifth circuit court to adopt the time of conviction rule.  See Salinas v. Bondi, 131 F.4th 840, 845-46 (8th Cir. 2025).

"misconstrued the problem," which was "one of statutory interpretation, not policy." It concluded that the time of conviction rule offered an "alternative interpretation that pose[d] far fewer retroactivity problems."

## II. Standard of Review

In our review of immigration agency decisions, we "typically focus[] on the final decision of the BIA." Ferreira v. Garland, 97 F.4th 36, 45 (1st Cir. 2024) (alteration in original) (quoting Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020)). But "to the extent that the BIA deferred to or adopted the IJ's reasoning," we also review those parts of the IJ's decision. Id. at 46 (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)); see also Bonilla v. Mukasey, 539 F.3d 72, 76 (1st Cir. 2008). "We review the agency's legal conclusions," like the one presented here, "de novo." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023).[7]

---

[7] In Espinoza-Ochoa, we also explained that under de novo review, we give "some deference to [an agency's] interpretations of statutes and regulations related to immigration matters." 89 F.4th at 230 (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 14 (1st Cir. 2014)). Here, the parties have raised no questions about deference to agency interpretations. See Fleurimond v. Bondi, 157 F.4th 1, 5 n.1 (1st Cir. 2025). We therefore do not address potential implications, if any, of Kisor v. Wilkie, 588 U.S. 558 (2019), or Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024). See id.

- 8 -

## III. Discussion

To evaluate removability under section 237(a)(2)(B)(i) of the INA for individuals convicted of state drug crimes, we employ the categorical approach, comparing the state statute of conviction with the federal CSA to determine if there is a categorical match.[8] See Swaby, 847 F.3d at 65-66. This case requires us to clarify which version of the CSA controls when using the categorical approach. The parties present us with two alternatives. Dor argues that we must refer to the CSA in effect at the time of the noncitizen's removal proceedings. The government, in contrast, contends that the CSA as it existed at the time of the noncitizen's criminal conviction controls. We refer to these proposed approaches as the "time of removal rule" and the "time of conviction rule."

### A. The Parties' Arguments

Dor's arguments center on the purpose and text of section 1751 of the Anti-Drug Abuse Act of 1986. Through section 1751, which we refer to as "the 1986 Amendments," Congress amended the nation's immigration laws by incorporating the CSA by reference into the INA. In so doing, Dor asserts that Congress replaced a

---

[8] And where the state offense includes "several different crimes, each described separately," we apply the modified categorical approach. See Swaby v. Yates, 847 F.3d 62, 67 (1st Cir. 2017) (quoting Mellouli v. Lynch, 575 U.S. 798, 805 n.4 (1980)). For a brief description of the modified categorical approach, see infra note 11.

static list of controlled substances with the CSA, "a list . . . designed to be periodically expanded (or reduced) by federal law enforcement."  Through its explicit choice to cross-reference a dynamic drug schedule to the INA, Dor argues that Congress "signaled to immigration courts that they should not rely on a fixed list of controlled substances when adjudicating the adverse consequences of a controlled-substance conviction, but rather should apply the version of the Act 'in effect at the time the cross-referenced provision was needed.'"  (Quoting Brown v. United States, 602 U.S. 101, 126 (2024) (Jackson, J., dissenting).)

Building on this congressional intent argument, Dor contends that the text of the 1986 Amendments further supports his time of removal rule.  Subsection (b) incorporated the CSA into the INA, and in so doing, "expanded the universe of controlled-substance convictions" with adverse immigration consequences.  And subsection (c), Dor argues, made this expansion effective retroactively.  See Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1751(c), 100 Stat. 3207, 3207-47 ("The amendments made by the subsections (a) and (b) of this section shall apply to convictions occurring before, on, or after the date of the enactment of this section.").  Dor argues that by enacting this retroactively effective expansion, Congress linked the negative immigration consequences of a controlled substance conviction to

- 10 -

the CSA's evolving drug schedules "irrespective of the temporal relationship between the noncitizen's conviction and the [CSA]."

Finally, Dor argues that the circuit courts that have adopted the time of conviction rule misinterpreted the 1986 Amendments and their impact on the INA. Dor acknowledges these courts' concerns about "unforeseeable immigration consequences" if, following a noncitizen's conviction, the federal drug schedules are expanded to include substances that did not previously implicate removability. Yet he argues that these concerns are misplaced. Despite Congress' clear retroactive intent at the time it enacted the 1986 Amendments, Dor argues that it is "less clear" that Congress intended such retroactivity "to continue for years into the future."

For the first time at oral argument, in advocating for this "one-way ratchet," Dor drew parallels to the sentencing enhancements context. He pointed to United States v. Abdulaziz, 998 F.3d 519 (1st Cir. 2021), arguing that, when applying an enhancement, this court evaluated a criminal defendant's culpability and dangerousness at the time of sentencing (not the time of commission or conviction of the crime triggering the enhancement). He contends that we should similarly evaluate a noncitizen's culpability implicating removal at the time of their removal proceedings.

The government begins its arguments with the text of section 237(a)(2)(B)(i) of the INA. It maintains that the statutory text alone does not indicate which version of the CSA controls -- a point that Dor does not contest.

The government then focuses on how the time of conviction rule aligns with the categorical approach and its purpose of promoting fairness, efficiency, and predictability. The government argues that Dor's time of removal rule raises fairness and notice concerns because noncitizen criminal defendants subject to this rule could later become removable for conduct that did not implicate removability at the time they entered a plea agreement or were adjudicated guilty.

The government finds support in the "unanimous trend" across the five circuit courts that have adopted the time of conviction rule. (Citing Doe v. Sessions, 886 F.3d 203, 209-10 (2d Cir. 2018); Salinas v. Bondi, 131 F.4th 840, 845-46 (8th Cir. 2025); Medina-Rodriguez v. Barr, 979 F.3d 738, 749 (9th Cir. 2020); Gordon v. U.S. Att'y Gen., 962 F.3d 1344, 1351 n.4 (11th Cir. 2020); Martinez v. Att'y Gen., 906 F.3d 281, 287 (3d Cir. 2018).) It especially relies on Doe v. Sessions, where the Second Circuit addressed the importance of fair notice and effective assistance of counsel, and reasoned that removability should not "be based on fortuities concerning the timing of the petitioner's removal

proceedings or [Drug Enforcement Administration] rulemaking."  886 F.3d at 210.

The government rejects Dor's "future" retroactivity argument (that Congress did not intend to impose immigration consequences retroactively for "decades into the future" when changes to the CSA newly implicate negative immigration consequences).  It argues that Congress enacted the 1986 Amendments nearly forty years ago, "long before any incident in this case," and therefore this change "is not being applied retroactively."

Finally, the government argues that by failing to clarify which specific moment in time to use when applying the time of removal rule, Dor did not provide a workable standard. The government maintains that multiple conceivable moments could be utilized, such as when DHS issues a Notice to Appear ("NTA"), an IJ issues a removal order, the BIA issues its decision, or removal itself occurs, demonstrating the confusion that arises under this rule.  Dor addressed this issue for the first time at oral argument.  He proposed the issuance of the charging document that initiates removal proceedings -- the NTA -- as the appropriate moment in time under the time of removal rule.  Because Dor raised this proposal only at oral argument, the government did not engage with it.

## B. Analysis

We begin, as we must, with the text of the statute at issue. Section 237(a)(2)(B)(i) of the INA makes a noncitizen deportable for "ha[ving] been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21)."[9]  As discussed, 21 U.S.C. § 802 is the definitions section of the CSA. The government argues that the text of section 237(a)(2)(B)(i) does not clarify which version of the CSA to apply. Dor does not explicitly contest this[10] and even acknowledges that "the statutory text offers no meaningful clue as to [c]ongressional intent on this question." Thus, as a threshold matter, we will assume -- without deciding -- that the text of section 237(a)(2)(B)(i) alone does not resolve our question.

Next, we examine Dor's contention that congressional intent as expressed in the 1986 Amendments should inform our reading of section 237(a)(2)(B)(i). As mentioned, Dor posits that by incorporating the CSA's "dynamic" drug schedules into the INA,

---

[9] The statute provides an exception when the noncitizen only has a "single offense involving possession for one's own use of 30 grams or less of marijuana."  INA § 237(a)(2)(B)(i).

[10] Rather than making a textual argument about section 237(a)(2)(B)(i), Dor contends that Congress' intent, as expressed in its 1986 Amendments, instructs us to read this removability provision as referencing the CSA at the time of a noncitizen's removal proceedings.

Congress aimed to synchronize immigration and controlled substance policies, and to signal that the CSA in effect "at the time of a noncitizen's removal proceeding" governs removability. But that intent is not self-evident, and Dor's argument is unavailing.

Though Congress made the 1986 Amendments applicable "to convictions occurring before, on, or after the date" of their enactment, that decision does not bear on the operative question regarding which version of the CSA governs our analysis. While Congress was clear that the 1986 Amendments apply to prior convictions, it was silent about which version of the CSA controls. Thus, we see no reason to read into the 1986 Amendments an intent that the CSA controlled substance definitions at the time of removal must govern the analysis. Additionally, the "dynamic" nature of the CSA that Dor highlights does not direct an outcome here. Changes to the CSA are no less relevant under the time of conviction rule than under the time of removal rule. In other words, whether courts look to the CSA at the time of a noncitizen's conviction or at the time of their removal, outcomes may vary for different individuals under either rule because of the evolving nature of the CSA.

We now turn from the text of the statute to case law. In Mellouli v. Lynch, the Supreme Court held that the petitioner was not removable on controlled substance grounds where it was "immaterial" under his Kansas statute of conviction whether the

possessed substance was defined in the CSA schedules. 575 U.S. at 801. In the present case, the government points to the Court's statement that "[a]t the time of Mellouli's conviction, Kansas' schedules included at least nine substances not included in the federal lists" as support for its time of conviction rule. (Quoting Mellouli, 575 U.S. at 802 (emphasis added).) And our sister circuits have as well. See, e.g., Martinez, 906 F.3d at 287 (referencing Mellouli's "at the time of [his] conviction" language (alteration in original) (emphasis omitted)). For example, in Doe v. Sessions, the Second Circuit cited this same language to support its understanding that the Supreme Court had "previously assumed" that removability "depend[ed] on whether a state drug schedule sweeps more broadly than the CSA [s]chedules in force" at the time of conviction. 886 F.3d at 208 (citing Mellouli, 575 U.S. at 808); see Medina-Rodriguez, 979 F.3d at 748 (noting that in Mellouli, "the Supreme Court had assumed that the federal drug schedule at the time of conviction determined removability").

Although Mellouli informs our analysis, the question that we face was not squarely before the Supreme Court. See Abdulaziz, 998 F.3d at 530. The Court had "no occasion to consider" which version of the CSA schedules to apply because "neither party . . . contended that the federal drug schedules had expanded or contracted in any material way between the time of

Mellouli's 2010 Kansas conviction and his removal proceedings in 2012." Id. (emphasis omitted) (discussing Mellouli). In fact, we have previously observed that the Court's own citation in Mellouli in support of its conclusion "that some of the substances on the 2010 Kansas schedules were 'not included in the federal lists'" relied on Drug Enforcement Administration documents "from 2013" -- well after Mellouli's 2010 Kansas conviction. Id. (quoting Mellouli, 585 U.S. at 802).

Although Mellouli's passing reference to the petitioner's time of conviction provides only limited instruction, we are persuaded -- as our sister circuits have been -- that its broader discussion of the categorical approach has import here. See 575 U.S. at 806. As the Court observed, "[r]ooted in Congress' specification of conviction, not conduct, as the trigger for immigration consequences, the categorical approach is suited to the realities of the system." Id. By requiring courts to evaluate "what a conviction necessarily established" under the language of the statute, and disallowing examination of the underlying facts,[11] "the categorical approach ordinarily works to promote efficiency, fairness, and predictability in the administration of immigration

---

[11] The modified categorical approach, in contrast, allows limited consideration of the facts insofar as courts "may determine which particular offense the noncitizen was convicted of" by examining certain specified documents, such as the charging document, jury instructions, and, where applicable, plea agreement and colloquy. See Mellouli, 575 U.S. at 805 n.4.

law." Id. at 806; see also Moncrieffe v. Holder, 569 U.S. 184, 200-01 (2013) (acknowledging that, by precluding "relitigation of past convictions," the categorical approach "promotes judicial and administrative efficiency").

This predictability allows noncitizen criminal defendants "to anticipate the immigration consequences of guilty pleas" and make informed decisions about "safe harbor" pleas that minimize their risk of removability. See Mellouli, 575 U.S. at 806 (citation omitted). If a court evaluating removability uses the CSA at the time of removal proceedings as its point of comparison, however, such predictability disappears. See Medina-Rodriguez, 979 F.3d at 748. As the Second Circuit explained in Doe, if that were the case, it would be "impossible" to "anticipate the immigration consequences of a guilty plea or conviction at trial at the point when [the government and noncitizen] must determine how to proceed with the criminal case." 886 F.3d at 209. A noncitizen criminal defendant could enter a supposed safe harbor plea to a state statute that, at the time of their plea, was overly broad compared to the CSA and therefore did not implicate removability. See id. at 209-10. "But if the CSA [s]chedules were later expanded to encompass the same drugs as the state statute," that same individual "could then become removable by the time removal proceedings commenced." Id. at 210.

At the key moment when a noncitizen must decide how to proceed in their criminal case, then, the time of removal rule provides no real way to anticipate immigration consequences. But, in Padilla v. Kentucky, the Supreme Court held that the Sixth Amendment right to counsel requires criminal defense attorneys to inform noncitizen clients whether their "plea carries a risk of deportation." See 559 U.S. 356, 366, 374 (2010); see also Hinds v. Lynch, 790 F.3d 259, 262 (1st Cir. 2015). As we acknowledged in United States v. Castro-Taveras, the Padilla decision overturned a "prevalent rule" across circuit courts, including ours, "that deportation consequences [did] not implicate the Sixth Amendment right to counsel" because deportation was considered only a "collateral consequence[] of a criminal proceeding." 841 F.3d 34, 38 (1st Cir. 2016). By overturning that rule, Padilla clarified the rights and obligations of noncitizen criminal defendants and their defense attorneys. Dor's proposed time of removal rule would hinder defense attorneys from providing meaningful counsel to noncitizens about the advisability of plea deals, particularly with respect to deportation risks. Because this rule threatens to run afoul of binding precedent in Padilla, we disfavor it.

Ultimately, we cannot support an interpretation that could attach new legal consequences -- including removal from this country -- to conduct that did not implicate such dire

- 19 -

repercussions at the time of an adjudication of guilt. Although Dor contends that our concerns about retroactive adverse immigration consequences are misplaced, we are unconvinced.[12] Because the government's time of conviction rule instead provides "maximum clarity" at the pivotal moment when a noncitizen must assess if "pending criminal charges may carry a risk of adverse immigration consequences," we join the Second Circuit and all our sister circuits and adopt that rule. See Doe, 886 F.3d at 210 (quoting Padilla, 559 U.S. at 369).

## IV. Conclusion

For the foregoing reasons, when evaluating whether a noncitizen is subject to removal for a controlled substance conviction under section 237(a)(2)(B)(i) of the INA, we consider the CSA as it existed at the time of the noncitizen's conviction. Because the Massachusetts definition of marijuana was a categorical match with the federal definition at the time of Dor's August 2018 conviction, we deny his petition.

---

[12] In advocating for a "one-way ratchet" to address our retroactivity concerns, as mentioned, for the first time at oral argument, Dor pointed to our decision in Abdulaziz for support. See 998 F.3d 519 (1st Cir. 2021). He attempted to draw parallels between our time of sentencing rule in the sentencing enhancements context and his proffered time of removal rule in the immigration removal context. See id. Because it is "a well-settled principle that arguments not raised by a party in its opening brief are waived," and lacking briefing to engage with this issue properly, we deem this argument waived. See United States v. Mayendía-Blanco, 905 F.3d 26, 32 (1st Cir. 2018).