*Doe v. Sessions*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2017

(Argued: September 26, 2017     Decided: March 29, 2018)

No. 16-1256

————————————————————

JOHN DOE,

*Petitioner*,

-v.-

JEFFERSON B. SESSIONS III, United States Attorney General,

*Respondent*.

————————————————————

Before:     LIVINGSTON, LYNCH, and CHIN, *Circuit Judges*.

Petitioner John Doe seeks review of an April 13, 2016 judgment of the Bureau of Immigration Appeals dismissing his appeal from an October 22, 2015 decision of an Immigration Judge ordering Doe's removal and denying his application for deferral of removal under the Convention Against Torture ("CAT"). We DENY the petition insofar as Doe challenges his conviction-based removal on the ground that, in determining whether his federal narcotics conviction rendered him removable, the agency was required to apply a "time-of-decision" rule and to compare his statute of conviction to the version of the

1

Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, in effect during his removal proceedings. We GRANT the petition to the extent that Doe urges that the agency committed legal error in denying his application for deferral of removal pursuant to the CAT.

FOR PETITIONER:                     WHITNEY ELLIOTT (Seymour James, Jr., Adriene Holder, Maria E. Navarro, Charles Conroy, Ward Oliver, Stacy Taeuber, Julie Dona, *on the brief*), The Legal Aid Society, New York, NY.

FOR RESPONDENT:                     DANA M. CAMILLERI (Benjamin P. Mizer, Anthony P. Nicastro, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Petitioner John Doe, a native and citizen of the Dominican Republic admitted to the United States on September 13, 2007 as a lawful permanent resident, seeks review of an April 13, 2016 decision of the Board of Immigration Appeals ("BIA") dismissing the appeal of an October 22, 2015 decision of an Immigration Judge ("IJ"), which ordered Doe's removal and denied his application for deferral of removal under the Convention Against Torture

2

("CAT"). *See In re John Doe*, No. A058 529 649 (B.I.A. Apr. 13, 2016), *aff'g* No. A058

529 649 (Immig. Ct. N.Y. City Oct. 22, 2015).[1]

Doe was found removable based on his conviction in the Southern District

of New York for violating the Controlled Substances Act ("CSA"), 21 U.S.C. § 801

*et seq*. The agency determined that Doe's conviction involved the violation of a

United States law "relating to a controlled substance (as defined in [the CSA at]

section 802 of Title 21)," 8 U.S.C. § 1227(a)(2)(B)(i), and that his crime constituted

a drug trafficking aggravated felony, 8 U.S.C. §§ 1101(a)(43)(B), (U); *see also* 18

U.S.C. § 924(c)(2) (defining "drug trafficking crime" to mean, in relevant part, "any

felony punishable under the Controlled Substances Act"). Doe challenges that

determination, arguing that his CSA conviction does not "categorically fit[] within

the 'generic' federal definition" of a removable offense, *see Moncrieffe v. Holder*, 569

U.S. 184, 190 (2013), because the drug schedules in the CSA ("CSA Schedules") at

the time of his conviction were broader than the CSA Schedules at the time of his

removal proceedings. Doe also challenges the agency's denial of CAT relief.

For the reasons set forth below, we conclude that the agency committed a legal

---

[1] Citations to the agency's decisions have been modified to reflect our grant of the petitioner's motion to proceed under a pseudonym.

error in assessing Doe's claim to CAT relief, but that it did not err in determining that Doe was removable by virtue of his federal drug trafficking conviction. Accordingly, Doe's petition for review is GRANTED in part and DENIED in part.

## BACKGROUND

Petitioner John Doe, a native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident in 2007. In 2014, Doe pleaded guilty in the Southern District of New York to one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C) of the CSA. Doe cooperated with law enforcement upon his arrest in connection with this crime and provided information that helped the government convict the other individuals involved. Certified Administrative Record ("CAR") at 864. He entered his guilty plea pursuant to a cooperation agreement.

After his conviction, Doe was charged as removable under the Immigration and Nationality Act ("INA") for having been convicted of a controlled substance offense, a drug trafficking aggravated felony, and a conspiracy to commit a drug trafficking aggravated felony. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), (B)(i); *id.* §§ 1101(a)(43)(B), (U). Before the IJ, Doe admitted the Government's factual

4

allegations but contested removability. He applied for asylum, withholding of removal, and, as relevant here, CAT relief, alleging fear of the co-defendants in his criminal case (because he had cooperated) and of a rival family in the Dominican Republic.

Although Doe's judgment of conviction specifies that he conspired to distribute heroin, the substantive statute underlying his conspiracy renders it a crime to distribute or possess with intent to distribute "a controlled substance," meaning any substance listed in one of the five CSA Schedules. 21 U.S.C. § 841(a)(1); *see also* 21 U.S.C. § 802(6) (defining "controlled substance" for purposes of the CSA). In January 2015, during Doe's removal proceedings, the DEA removed naloxegol from these Schedules. *See* Schedules of Controlled Substances: Removal of Naloxegol From Control, 80 Fed. Reg. 3468, 3469 (Jan. 23, 2015) (codified at 21 C.F.R. pt. 1308). Doe moved to terminate proceedings on the ground that after naloxegol was removed from the CSA Schedules, his conviction no longer categorically involved a controlled substance, as required for his removal. CAR at 357. That is so, argued Doe, because the Schedules were broader on the date of his conviction than at the time of his removal proceedings (because a person could be convicted of distributing naloxegol in 2014, when Doe

was convicted, but not in 2015, when the Schedules were amended). Because of this mismatch, Doe asserted, he was no longer convicted of a crime categorically involving a federally controlled substance and therefore could not be removed on this basis.

The IJ disagreed. In a written decision, the IJ explained that Doe's motion to terminate was properly denied because *Matter of Ferreira*, 26 I. & N. Dec. 415 (B.I.A. 2014), instructs that a court is to compare the statute of conviction to the CSA Schedules in place *at the time of conviction*. "In this case," the IJ concluded, "[Doe] was convicted of a crime in violation of the CSA. Thus, at the time of his conviction, he was necessarily convicted of a crime relating to a federally controlled substance." CAR at 102–03. As relevant here, the IJ also denied CAT relief, noting that Doe had conceded that only one of his co-conspirators, a friend who posed no threat, was even aware that he had cooperated, and concluding that Doe failed to demonstrate that he would likely be tortured by his co-defendants or the rival Dominican family if returned to the Dominican Republic. *Id.* at 104–06.

The BIA dismissed Doe's appeal. As to Doe's argument that his conviction no longer categorically constitutes a crime relating to a controlled substance, the

6

BIA agreed with the IJ that "the proper approach is to compare the statute of conviction with the federal drug schedules as they existed *at the time of conviction*," not at the time of removal proceedings. CAR at 5 (emphasis in original). Regarding CAT relief, the BIA also discerned no clear error in the IJ's determination that Doe failed to show a likelihood of torture.

Doe's petition for review argues (1) that he is not removable as charged under the "categorical approach" and (2) that as to CAT relief, the agency committed a legal error by concluding that Doe "conceded that . . . only [one] person[] knew that [Doe] cooperated with the authorities." *Id.* at 105. We address each of these arguments in turn.

## DISCUSSION

### I. The Categorical Approach and Doe's CSA Conviction

Because Doe was ordered removed for a drug conviction, our review is limited to "constitutional claims or questions of law raised upon a petition for review." *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 164 (2d Cir. 2006) (quoting 8 U.S.C. § 1252(a)(2)(D)). Doe disputes that his crime was a removable offense under the "categorical approach." This is a question of law, which the Court reviews *de novo*. *Id.* at 165.

7

\* \* \*

Pursuant to the INA, an alien may be removable after the time of admission when he or she is convicted, as relevant here, of

(1) violating or conspiring to violate "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)" and excluding single offenses involving small amounts of marijuana, 8 U.S.C. § 1227(a)(2)(B)(i);[2] or

(2) committing an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), a term which encompasses, in relevant part, crimes involving "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)," 8 U.S.C. § 1101(a)(43)(B);[3] or

(3) conspiring to commit an aggravated felony, 8 U.S.C. § 1101(a)(43)(U).

---

[2] As the Supreme Court stated in *Mellouli v. Lynch*, 135 S. Ct. 1980, 1984 (2015), 8 U.S.C. § 1227(a)(2)(B)(i) thus "incorporates 21 U.S.C. § 802, which limits the term 'controlled substance' to a 'drug or other substance' included in one of five federal schedules" in the CSA.

[3] "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 *et seq.*) . . . ." 18 U.S.C. § 924(c)(2).

Doe was charged as removable for having been convicted of (1) violating a law relating to a controlled substance; (2) a drug trafficking aggravated felony crime; and (3) a conspiracy to commit a drug trafficking aggravated felony crime.

In the context of *state* criminal convictions alleged to constitute drug trafficking offenses for which an alien is removable, we have employed the "categorical approach to determine whether [a] state offense is comparable to an offense listed in the INA." *Moncrieffe*, 569 U.S. at 190 (internal quotation marks and citations omitted). The relevant inquiry has focused on "whether the state statute under which the alien was convicted covered federally controlled substances [as defined in the CSA Schedules] and not others." *Mellouli*, 135 S. Ct. at 1987.

In contrast, our working assumption has been that "[w]here an alien has a prior *federal* conviction, it is a straightforward matter to determine whether the conviction was for a 'felony punishable under the CSA.'" *Moncrieffe*, 569 U.S. at 211 (Alito, J., dissenting) (brackets omitted) (emphasis added); *see also Carachuri-Rosendo v. Holder*, 560 U.S. 563, 583 (2010) (Scalia, J., concurring in the judgment) (noting relevant INA provisions make clear that "a *federal* conviction for a felony offense under the Controlled Substances Act would qualify [as a felony punishable

9

under the CSA]" (emphasis in original)).   Doe's felony conviction for violating the CSA is obviously such a conviction.

But, argues Doe, to determine whether his conviction now makes him removable, the agency should apply a "time-of-decision" rule and compare his statute of conviction to the version of the CSA in effect during his removal proceedings.   The DEA removed naloxegol from the CSA Schedules in 2015, before the IJ rendered a decision.   *See* Schedules of Controlled Substances: Removal of Naloxegol From Control, 80 Fed. Reg. at 3469.   According to Doe, because the 2014 CSA Schedules, which included naloxegol as a controlled substance, "criminalize[d] a broader swath" of substances than the 2015 CSA Schedules in force at the time of his removal proceedings, Doe's 2014 conviction is no longer a removable offense pursuant to the categorical approach.   *Descamps v. United States*, 570 U.S. 254, 258 (2013) (discussing use of categorical analysis to assess whether a statute of conviction "criminalizes a broader swath of conduct than the relevant generic offense" in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

We disagree.   In employing the categorical approach to determine whether state drug offenses constitute felonies punishable under the CSA, the Supreme

Court, this Court, and the BIA have previously assumed that an alien's removability depends on whether a state drug schedule sweeps more broadly than the CSA Schedules in force at the time of the alien's conviction, and not at the time that his removal proceedings are initiated. *See, e.g.*, *Mellouli*, 135 S. Ct. at 1988 ("*At the time of Mellouli's conviction*, Kansas'[s] schedules of controlled substances included at least nine substances—*e.g.*, salvia and jimson weed—not defined" as controlled substances under federal law (emphasis added)); *Collymore v. Lynch*, 828 F.3d 139, 141 n.2, 142 n.4, 145 (2d Cir. 2016) (noting that Collymore's statute of conviction and the CSA Schedule had been amended, but comparing state and federal controlled substances schedules in effect "*at the time of Collymore's conviction*" (emphasis added)); *Matter of Ferreira*, 26 I. & N. Dec. at 418 ("[T]he presence of these two substances in the Connecticut schedules *at the time of the respondent's conviction* meant that the definition of a controlled substance incorporated by [the Connecticut law] was broader than the definition of a

controlled substance [under federal law]." (emphasis added)).[4]  Doe suggests no

persuasive reason why this is not the correct approach.

Noting that the issue in this case was not squarely raised by the parties in

*Mellouli*, *Collymore*, and *Matter of Ferreira*, Doe argues that the use of present tense

verbs in particular sections of the INA indicates that we should refer to the version

of the CSA Schedules in force when removal proceedings are initiated.   Pet'r Br.

21–22 (quoting 18 U.S.C. § 924(c)(2) ("any felony *punishable under the Controlled*

*Substances Act*"), as referenced in 8 U.S.C. § 1101(a)(43)(B), and 8 U.S.C.

§ 1227(a)(2)(B)(i) ("controlled substance[s] . . . *as defined in* section 802 of Title 21")

(emphasis in original)).   This argument is unpersuasive.   The INA provisions to

which he points merely specify the crimes for which an alien may be removed and

---

[4] *Gousse v. Ashcroft*, 339 F.3d 91 (2d Cir. 2003), is not to the contrary.   In *Gousse*, the petitioner was arrested and later convicted for a Connecticut state law drug offense. 339 F.3d at 98.   At the time of his arrest, Connecticut criminalized a narcotic substance, butorphanol, that was not listed on federal CSA Schedules at the time of his conviction. *Id.*   After his arrest but before the petitioner was convicted, butorphanol was added to the CSA Schedules.   *Id.* at 99.   The petitioner argued that he was not removable because the court should "look only at the schedules of substances proscribed under federal law *at the time of the offense conduct*."   *Id.* (emphasis added).   *Gousse* rejected that view, noting that the CSA Schedules aligned with Connecticut law at the time of conviction and at the time of removal proceedings.   *Id.*   In *Gousse*, however, we did not dictate which of the two—time of conviction or removal—was dispositive: we just held that we would not apply a "time-of-conduct" rule.   We now clarify that the correct rule is the "time-of-conviction" rule.

12

refer to different provisions of the United States Code for their definitions.   As a

matter of plain meaning, these provisions offer no insight into whether the INA

mandates a "time-of-conviction" or a "time-of-decision" rule.[5]

Referencing the CSA Schedules in effect at the time of conviction, moreover,

aligns with the purpose of the categorical approach to statutory interpretation.

As the Supreme Court has explained, "[b]y focusing on the legal question of what

a conviction *necessarily* established, the categorical approach ordinarily works to

promote efficiency, fairness, and predictability in the administration of

immigration law."   *Mellouli*, 135 S. Ct. at 1987.   If the point of comparison is the

---

[5] Indeed, it can more persuasively be argued that the plain meaning of the statutory text points to a "time-of-conviction" rule.   INA provisions authorizing the Attorney General to remove aliens convicted of serious offenses after admission focus not on the timing of removal proceedings but, instead, on the conviction itself.   *Cf. Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) (analyzing "the 'focus' of congressional concern" to ascertain statutory meaning).   Thus, an alien is removable if he "is convicted" of an aggravated felony or controlled substances offense "at any time after admission."   8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony); *id.* § 1227(a)(2)(B)(i) (controlled substances offense).   The Supreme Court has likewise instructed that the use of the word "*convicted*" in "the text of the INA . . . indicates that we are to look to the conviction itself as our starting place" when applying the categorical analysis. *Carachuri-Rosendo*, 560 U.S. at 576 (emphasis in original).   The conviction is "the relevant statutory hook," and is itself the most relevant reference point.   *Moncrieffe*, 569 U.S. at 191 (quoting *Carachuri-Rosendo*, 560 U.S. at 580); *see also Carachuri-Rosendo*, 560 U.S. at 580 (criticizing a variant of the categorical approach which ignored the conviction and instead "focuse[d] on facts known to the immigration court that . . . *did not serve* as the basis for the [petitioner's] conviction and punishment" (emphasis in original)).

13

CSA Schedules at the time of removal proceedings, however, it is impossible for either the Government or the alien to anticipate the immigration consequences of a guilty plea or conviction at trial at the point when these parties must determine how to proceed with the criminal case. For example, by Doe's logic, if at the time of conviction, an alien's state statute of conviction encompassed a broader range of drugs than the CSA Schedules, then at that time the alien would not be categorically removable. But if the CSA Schedules were later expanded to encompass the same drugs as the state statute, the same alien could then *become* removable by the time removal proceedings commenced.

Though "we have held that the Supreme Court's language in [*Padilla v. Kentucky*, 559 U.S. 356, 374 (2010), and *I.N.S. v. St. Cyr*, 533 U.S. 289, 323 (2001),] was insufficient to overturn our prior holdings that retroactive deportation does not violate the Ex Post Facto Clause[, n]evertheless, the gravitational pull of these constitutional norms—the rights of fair notice and effective assistance of counsel" remains instructive. *Lugo v. Holder*, 783 F.3d 119, 122 (2d Cir. 2015). The "starting place" of the categorical approach should enable "fair notice and effective assistance of counsel" by focusing on the CSA Schedules in effect at the

14

time of conviction. *Id.*; *Carachuri-Rosendo*, 560 U.S. at 576.[6] Such a "time-of-conviction" rule provides both the Government and the alien with maximum clarity at the point at which it is most critical for an alien to assess (with aid from his defense attorney) whether "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369; *see also Mellouli*, 135 S. Ct. at 1987 ("In particular, the [categorical] approach enables aliens to anticipate the immigration consequences of guilty pleas in criminal court, and to enter safe harbor guilty pleas that do not expose the alien defendant to the risk of immigration sanctions." (internal quotation marks and brackets omitted)).

As the BIA noted in *Matter of Ferreira*, the CSA schedule is a moving target: since 1970, "approximately 160 substances have been added, removed, or transferred from one schedule to another." 26 I. & N. Dec. at 418; *see also Mellouli*, 135 S. Ct. at 1987 & n.6 (discussing "increasingly long list of controlled substances"

---

[6] Doe's invocation of the pending-action canon to argue for a time-of-removal rule is unavailing. Pet'r Br. 23–26; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 266 (2012) (defining the pending-action canon as requiring that "[w]hen statutory law is altered during the pendency of a lawsuit, the courts at every level must apply the new law unless doing so would violate the presumption against retroactivity"). This canon is inapplicable here because the statutory law has not changed. At both the time of Doe's conviction and the time of his removal proceedings, the statutory law authorized his removal because Doe remained "*convicted*" of an aggravated felony or controlled substances offense "after admission." 8 U.S.C. §§ 1227(a)(2)(A)(iii), (B)(i) (emphasis added).

as the basis for offenses that would render an alien removable). A petitioner's removability should not, as a rule, be based on fortuities concerning the timing of the petitioner's removal proceedings or DEA rulemaking. *Cf. United States v. Smith*, 354 F.3d 171, 174 (2d Cir. 2003) (noting design of federal "saving statute," 1 U.S.C. § 109, "to ensure that a convicted criminal defendant does not fortuitously benefit from more lenient laws that may be passed after he or she has been convicted"). Doe can cite no case in which a petitioner has prevailed in the circumstances here. This is unsurprising, since nothing in the INA or related case law weighs in favor of Doe's position. Accordingly, his challenge to removability fails.

## II.    CAT Relief

Doe next argues, with more success, that the agency committed legal error in assessing his claim that his removal should be deferred pursuant to the CAT. In his brief, Doe asserts that the agency erroneously concluded that he *conceded* that his co-defendants were unaware that he had cooperated with the Government in his criminal case when, in fact, he both argued and presented evidence to the contrary. "[W]hen an alien who is otherwise removable due to the commission of a covered criminal offense seeks deferral of removal under the CAT, appellate

16

jurisdiction is limited to review of constitutional claims and questions of law."

*Ortiz-Franco v. Holder*, 782 F.3d 81, 86 (2d Cir. 2015). However, the agency may

commit an error of law if "important" facts have been "totally overlooked and

others have been seriously mischaracterized." *Mendez v. Holder*, 566 F.3d 316, 323

(2d Cir. 2009); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir.

2006) (postulating legal error "where the IJ states that his decision was based on

petitioner's failure to testify to some pertinent fact when the record of the hearing

reveals unambiguously that the petitioner *did* testify to that fact" (emphasis in

original)). Without expressing any view as to the merits of Doe's CAT claim, we

conclude that such legal error occurred in this case and that remand for further

consideration is therefore required.

Doe alleged in his removal proceedings that prior to a court appearance in

his criminal case, the ringleader of the narcotics conspiracy in which Doe

participated issued a general threat to his co-defendants that "the person who

cooperated was going to have problems once that person goes back to the

Dominican Republic." CAR at 200. Doe also alleged that an individual

approached his nephew in the Dominican Republic and informed him that if Doe

left jail before the other co-defendants because he was a cooperator, Doe "was

17

going to have problems if [he] went back to the Dominican Republic." *Id.* at 204. This evidence formed the primary basis for Doe's CAT claim.

The IJ stated in a written opinion that Doe had *conceded* that only one co-defendant, who was a close friend, knew that Doe had cooperated with law enforcement. This was a mistake. Neither Doe nor the co-defendant testified to that effect at the removal hearing. To the contrary, the co-defendant testified that the ringleader and at least three other co-defendants believed Doe had cooperated because Doe was released from prison early. Doe also points to the prosecutor's sentencing letter, which specifically affirms that Doe's "information led to the conviction by guilty plea of all seven individuals about whom he provided information" and that it is "not mere supposition" to conclude that Doe's assistance resulted in these pleas *"because [Doe's] inculpation of those individuals was made public in the Complaint*, such that each of [his co-defendants] was well aware that [Doe] would likely be able to testify against them at any trial." *Id.* at 843 (emphasis added). The IJ's decision does not acknowledge this letter, much less assess its significance to Doe's CAT claim.

In sum, we conclude that the agency overlooked key evidence and mischaracterized the record when it determined that Doe conceded that only one

co-defendant knew about his cooperation. This fundamental legal error undermines the reliability of the agency's determination that Doe's application for CAT relief should be denied. Accordingly, and expressing no view as to the merits, we remand for the agency to determine whether Doe's allegations warrant deferral of removal under the CAT.

## CONCLUSION

We have considered all of Doe's other arguments and find them to be either without merit or beyond our jurisdiction. For the foregoing reasons, Doe's petition for review is GRANTED in part and DENIED in part. Accordingly, we VACATE the decision of the BIA and REMAND for further proceedings consistent with this opinion.