# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2779
_____

Lilia Mercedes Salinas

*Petitioner*

v.

Pamela Bondi,[1] Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 24, 2024
Filed: March 19, 2025
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Lilia Salinas, a native and citizen of Mexico and a lawful permanent resident of the United States, petitions for review from an order of the Board of Immigration Appeals (BIA) concluding that Salinas was removable under 8 U.S.C.

---

[1]Attorney General Bondi is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

§ 1227(a)(2)(B) based on a conviction for a state controlled substance offense and that she was ineligible for cancellation of removal. Having jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## I.

Salinas, a native and citizen of Mexico who entered the United States on an unknown date at an unknown location without being admitted or paroled, had her status adjusted to lawful permanent resident on April 17, 2007. In 2011, Salinas was convicted in North Dakota state court of one count of possession of marijuana with intent to deliver and received a suspended sentence of 360 days' imprisonment. In 2021, Salinas was convicted, again in North Dakota state court, of two counts of aggravated assault of a victim under 12 years of age, for which she received a sentence of 10 years' imprisonment with one year of that sentence suspended. Based on these convictions, in October 2022, the Department of Homeland Security (DHS) initiated removal proceedings and charged Salinas with removability under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled substance violation and 8 U.S.C. § 1227(a)(2)(E)(i) for having been convicted of a crime of child abuse, neglect, or abandonment.

Salinas conceded removability to the charge under § 1227(a)(2)(E)(i) but denied removability under § 1227(a)(2)(B)(i). An immigration judge (IJ) concluded that Salinas was removable, noting that Salinas conceded removability under § 1227(a)(2)(E)(i) and concluding that Salinas was removable, by clear and convincing evidence, under § 1227(a)(2)(B)(i), based on her conviction under North Dakota law for possession of marijuana. In determining whether the North Dakota conviction qualified as a controlled substance conviction, the IJ applied the categorical approach. The IJ first concluded that the statute of conviction, N.D. Cent. Code § 19-03.1-23(1)(b), is divisible as to drug type because it carries different punishments for different types of drugs, meaning that the drug type is an element of the offense. The IJ then considered the documents in Salinas's record of conviction to determine that Salinas was convicted of possessing marijuana. The IJ

-2-

then compared the definition of marijuana under North Dakota law to the federal definition of marijuana in the Controlled Substances Act (CSA) to determine whether there was a categorical match. Salinas argued that, in making this determination, the IJ should compare the North Dakota definition of marijuana in effect at the time of her conviction with the federal definition in effect at the time of her removal proceedings. Salinas argued that, when considering these versions of the statutes, there was not a categorical match because the North Dakota statute in effect at the time of conviction included hemp in the definition of marijuana while the federal definition in effect at the time of the removal proceedings excluded hemp. The exclusion of hemp as part of the federal definition of marijuana is the product of a 2018 amendment. The IJ considered Salinas's argument about whether a state statute is appropriately compared to the federal statute in effect at the time of the conviction or the federal statute in effect at the time of the removal proceedings, concluding that that the former controlled. The IJ specifically noted that the Eighth Circuit had never directly decided the issue but explained that this Court has suggested that the proper version of a federal definition is the one in effect at the time of the petitioner's conviction, not at the time of a petitioner's removal proceedings. The IJ also noted that this approach is consistent with other circuit courts of appeals that have considered the issue.

The IJ then compared the state and federal definitions of marijuana in effect at the time of Salinas's conviction. The IJ explained that, while the North Dakota definition of marijuana was not a "verbatim replica of the federal definition," they were substantially similar because "any variety [of cannabis] punishable as 'marijuana' under the 2010 North Dakota statute would necessarily be punishable under the federal definition of 'marijuana' that was applicable at the time of [Salinas's] conviction in 2010." In reaching this conclusion, the IJ rejected Salinas's argument that the definitions were not a categorical match because the federal definition of marijuana included "all parts of the plant Cannabis sativa L.," while the North Dakota definition covered "all parts of the plant cannabis." Because there was a categorical match between the state and federal statutes, the IJ concluded that Salinas's North Dakota marijuana conviction constitutes a violation of a state law

-3-

related to a controlled substance, making Salinas removable pursuant to § 1227(a)(2)(B)(i).

The IJ also pretermitted Salinas's application for cancellation of removal on the basis that, with a conviction rendering Salinas removable under § 1227(a)(2), Salinas did not have the requisite seven-year period of continuous residence in the United States because a § 1227(a)(2) conviction has the effect of stopping the clock on a period of continuous residence for purposes of cancellation of removal. Salinas's period of continuous residence began in 2007, and her 2011 marijuana conviction stopped the clock on this period, rendering her ineligible for cancellation of removal. Thus, in addition to rendering her removable, Salinas's marijuana conviction also made her ineligible for relief from removal in the form of cancellation of removal.

Salinas appealed the IJ's decision to the BIA, arguing that the IJ erred in concluding that she was removable pursuant to § 1227(a)(2)(B)(i) based on her marijuana conviction and that the timing of her offense rendered her ineligible for cancellation of removal. As relevant here, Salinas argued that the IJ erroneously compared the statute of conviction to the federal CSA in effect at the time of her conviction, rather than the CSA in effect at the time of her removal proceedings. The BIA adopted and affirmed the IJ's reasoning, concluding that the IJ properly compared the statute of conviction with the CSA in effect at the time of Salinas's conviction. Salinas also asserted that the IJ erred in concluding that the federal and state definitions of marijuana were a categorical match because the North Dakota definition of marijuana includes all parts of the plant cannabis while the federal definition is limited specifically to all parts of "plant Cannabis sativa L." The BIA rejected this argument, and, relying on Eighth Circuit case law, held that "both the state and federal definitions apply to all species and parts of the marijuana plant equally." The BIA thus affirmed the IJ's conclusions that Salinas was removable under § 1227(a)(2)(B)(i) and that she was ineligible for cancellation of removal. Salinas thereafter filed this petition for review.

II.

Salinas challenges the IJ and BIA's decisions on two grounds: (1) that they improperly compared the definition of marijuana in the statute of conviction to the definition of marijuana in the CSA in effect at the time of conviction rather than at the time of the removal proceedings and (2) that the IJ and BIA failed to recognize that the definition of marijuana under North Dakota law is overbroad because it criminalizes a broader category of marijuana than the federal definition. "'We generally review the BIA's decision as the final agency action,' but where 'the BIA essentially adopt[s] the IJ's opinion while adding some of its own reasoning, we review both decisions.'" Sharif v. Barr, 965 F.3d 612, 618 (8th Cir. 2020) (citations omitted). Whether a conviction qualifies as a controlled substance offense is a legal determination we review de novo. See Martinez v. Sessions, 893 F.3d 1067, 1070 (8th Cir. 2018).

"When the government seeks to remove an alien based on a state drug conviction, the adjudicator must use the 'categorical approach' to determine whether the elements of the state crime fit within the elements of the removable offense defined by federal law." Rincon v. Garland, 70 F.4th 1080, 1082 (8th Cir. 2023) (citation omitted). Where the state statute "contains multiple, alternative elements that create different crimes, then it is 'divisible,' and a modified categorical approach applies." Id. at 1083 (citation omitted). In applying the modified categorical approach, the adjudicator "determine[s] the alien's offense of conviction by examining a limited class of judicial records[, and, i]f the elements of the offense of conviction fit within the removable offense, then the alien is removable." Id. (citation omitted). The parties do not dispute that the statute of conviction, N.D. Cent. Code § 19-03.1-23(1) (2009) is divisible, nor do they dispute that Salinas's conviction involved marijuana. The only dispute on appeal is whether North Dakota's definition of marijuana is a categorial match to the definition of marijuana in the CSA so that the offense "fit[s] within the elements of the removable offense defined by federal law." See id. at 1082.

A.

Salinas first argues that there is not a categorical match between the state and federal definitions of marijuana because the appropriate federal definition of marijuana—the one in effect at the time of the removal proceedings—does not criminalize hemp, while the North Dakota statute does. Salinas asserts that the IJ and BIA erred by using the definition of marijuana in effect at the time of her conviction because the plain text of § 1227(a)(2)(B)(i), specifically its use of the present tense, demonstrates that it is prospective in nature and that it contains "no explicit command to refer to the version of [the] CSA that existed at the time of conviction." Further, Salinas asserts that applying the version of the CSA in effect at the time of removal proceedings respects Congress's plenary power over immigration matters, acknowledging Congress's authority to "expand or contract the breadth of removal charges" by modifying removal statutes. Salinas also argues that this Court's precedent regarding the application of the categorial approach in Armed Career Criminal Act (ACCA) cases supports her position because, in those cases, we compare the state drug schedule in effect at the time of the state conviction with the federal schedules in effect at the time of the federal offense. See United States v. Perez, 46 F.4th 691, 700 (8th Cir. 2022), abrogation recognized by United States v. Gordon, 111 F.4th 899, 901 n.4 (8th Cir. 2024).

We are unpersuaded by Salinas's contentions. First, while this Court has never decided the precise issue raised in this case, in Arroyo v. Garland, we explained that "several circuits have held that the proper analysis for cancellation of removal compares the state statutes of conviction to the federal definitions in effect at the time of the state conviction." 994 F.3d 905, 913 (8th Cir. 2021). Among the cases the Arroyo decision cites is Doe v. Sessions, 886 F.3d 203 (2d Cir. 2018), in which the Second Circuit rejected the argument that Salinas raises here. There, the Second Circuit specifically acknowledged the petitioner's argument that "the use of present tense verbs in particular sections of the [Immigration and Nationality Act (INA)] indicates that we should refer to the version of the CSA Schedules in force when removal proceedings are initiated," before rejecting it as "unpersuasive

-6-

[because t]he INA provisions to which [petitioner] points merely specify the crimes for which an alien may be removed and refer to different provisions of the United States Code for their definitions. As a matter of plain meaning, these provisions offer no insight into whether the INA mandates a 'time-of-conviction' or a 'time-of-decision' rule." Id. at 209. The court went on to explain that adopting the time-of-conviction approach "aligns with the purpose of the categorical approach to statutory interpretation" because the categorical approach is grounded in "efficiency, fairness, and predictability in the administration of immigration law." Id. (citation omitted). These aims would be lost by allowing an alien's removability to hinge on the CSA in effect at the time of removal proceedings because "it [would be] impossible for either the Government or the alien to anticipate the immigration consequences of a guilty plea or conviction at trial." Id. at 209-10. Ultimately, the Second Circuit concluded that "a 'time-of-conviction' rule provides both the Government and the alien with maximum clarity at the point at which it is most critical for an alien to assess (with aid from his defense attorney) whether 'pending criminal charges may carry a risk of adverse immigration consequences,'" and that "[a] petitioner's removability should not, as a rule, be based on fortuities concerning the timing of the petitioner's removal proceedings or DEA rulemaking." Id. at 210 (citation omitted).

In addition, both the Third and Eleventh Circuits have reached the same conclusion. See Martinez v. Att'y Gen., 906 F.3d 281, 287 (3d Cir. 2018) ("[T]he categorical approach directs us to compare the schedules at the time of conviction."); Gordon v. Att'y Gen., 962 F.3d 1344, 1351 n.4 (11th Cir. 2020) ("In assessing whether a noncitizen's conviction qualifies as an aggravated felony, we compare his offense of conviction to the CSA schedules in effect when he was convicted."). Further, in Medina-Rodriguez v. Barr, the Ninth Circuit also adopted the time-of-conviction approach, relying in part on Doe, and noting that it found "the approach of the Second, Third, and Eleventh Circuits to be persuasive," while also stating that "the Supreme Court has assumed that the time-of-conviction federal drug schedule is the appropriate one for the categorical approach comparison." 979 F.3d 738, 747-49 (9th Cir. 2020). We are aware of no circuit reaching a contrary conclusion, and

we note that underpinning each of these decisions is <u>Mellouli v. Lynch</u>, 575 U.S. 798, 808 (2015), where the Supreme Court held that a petitioner was not removable because, at the time of conviction of a controlled substance offense, the state schedules included substances not included in the federal schedules, inherently assuming that the federal drug schedule in effect at the time of conviction determines removability.

Second, as to Salinas's argument that applying the version of the CSA in effect at the time of removal respects Congress's plenary power to amend immigration laws, nothing in the time-of-conviction approach restricts Congress from modifying removal statutes. Considering the CSA in effect at the time of removal proceedings relies too heavily on DEA rulemaking as "the CSA schedule is a moving target: since 1970, 'approximately 160 substances have been added, removed, or transferred from one schedule to another.'" <u>Doe</u>, 886 F.3d at 210 (citation omitted). Finally, to the extent Salinas asks us to rely on precedent regarding the ACCA, we note that after briefing was completed in this case, the Supreme Court, in <u>Brown v. United States</u>, held that the appropriate version of the CSA to consider in determining whether a state conviction qualified as an ACCA predicate was that in effect at the time of the state conviction, effectively abrogating <u>Perez</u>. 602 U.S. 101, 123 (2024). Although we recognize distinctions exist between the ACCA and the immigration context, we find it significant that the Supreme Court adopted the time-of-conviction approach, rather than relying on the statutes in effect at the time of the federal offense.

Bolstered by the Supreme Court's treatment of analogous issues and the persuasive analysis of our sister circuits, we hold that, for the purposes of § 1227(a)(2)(B)(i), it is proper to compare the state statute in effect at the time of conviction with the CSA in effect at the time of conviction, not at the time of the immigration proceedings. The IJ and BIA thus did not err in relying on the CSA in effect at the time of Salinas's conviction to determine that Salinas's state law marijuana conviction qualified as a controlled substance violation rendering her removable pursuant to § 1227(a)(2)(B)(i).

B.

Next, we similarly find unavailing Salina's argument that the North Dakota definition of marijuana is overbroad as compared to the federal definition. At the time of Salinas's conviction, North Dakota defined marijuana as

> All parts of the plant cannabis whether growing or not; the seeds thereof; the resinous product of the combustion of the plant cannabis; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds. The term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

N.D. Cent. Code § 19-03.1-01(18). The CSA, at the time of Salinas's conviction, defined marijuana as

> All parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt derivative, mixture, or preparation of such mature stalks (except the resin extracted thereof), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2011). Salinas asserts that, because the federal definition includes only "all parts of the plant Cannabis sativa L.," it is limited to that species only, in contrast to the North Dakota definition, which is not limited to a specific species. Salinas's argument has been squarely foreclosed by circuit precedent. In United States v. White Plume, we stated that "Congress clearly defined 'marijuana' as Cannabis sativa L. in the CSA. 'We are persuaded that Congress adopted "Cannabis sativa L." believing it to be the term that scientists used to embrace all

-9-

marihuana-producing Cannabis; the other named sorts were not seen as separate Cannabis species.'" 447 F.3d 1067, 1071 (8th Cir. 2006) (quoting <u>United States v. Gavic</u>, 520 F.2d 1346, 1352 (8th Cir. 1975)). The IJ and BIA thus did not err in concluding that Salinas was removable pursuant to § 1227(a)(2)(B)(i) and in denying her application for cancellation of removal.

III.

For the foregoing reasons, we deny the petition for review.

_____