22-6482(L)
Salinas Orellana v. Bondi

BIA
Driscoll, IJ
A216 651 561

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand twenty-five.

PRESENT:
>      REENA RAGGI,
>      RAYMOND J. LOHIER, JR.,
>      BETH ROBINSON,
>           *Circuit Judges.*

_____

JOSE SALINAS ORELLANA,
>      *Petitioner*,

>      v.                                                   22-6482(L)
>                                                           24-1873(Con)
>                                                           NAC

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
>      *Respondent.*

_____

FOR PETITIONER:               Aaron J. Aisen, Rosalie Capps, Brenda A.
                              Cisneros Vilchis, Erie County Bar Association
                              Volunteer Lawyers Project, Inc., Batavia, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; John S. Hogan, Assistant Director; Lindsay Corliss, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of these consolidated petitions for review of two Board of Immigration Appeals ("BIA") decisions, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review in the lead case, 22-6482, is DENIED, the petition in the consolidated case, 24-1873, is GRANTED, and the case is REMANDED for further consideration of the evidence submitted with the motion to reopen.

Petitioner Jose Salinas Orellana, a native and citizen of El Salvador, seeks review of an October 5, 2022 decision of the BIA affirming an April 27, 2022 decision of an Immigration Judge ("IJ") denying his application for relief under the Convention Against Torture ("CAT"), *In re Jose Salinas Orellana*, No. A 216 651 561 (B.I.A. Oct. 5, 2022), *aff'g* No. A 216 651 561 (Immig. Ct. Batavia Apr. 27, 2022), and of a June 28, 2024 decision of the BIA denying his motion to reopen, *In re Jose Salinas Orellana*, No. A 216 651 561 (B.I.A. June 28, 2024). We assume the parties' familiarity with the underlying facts and procedural history.

**I.    Lead petition, 22-6482**

We have reviewed the IJ's decision as modified and supplemented by the

2

BIA, that is, minus the IJ's determination Salinas Orellana's past harm did not rise to the level of torture. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factfinding for substantial evidence and questions of law and application of law to fact de novo. *See Nasrallah v. Barr*, 590 U.S. 573, 583–84 (2020); *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 583 (2d Cir. 2021). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In support of his CAT claim, Salinas Orellana alleged that Barrio 18 gang members would find and kill him because he left the gang, that Salvadoran officials would identify and torture him as a gang member because of his tattoos, and that government officials would not protect him from gang members. A CAT applicant has the burden to establish that he will "more likely than not" be tortured by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a), 1208.18(a)(1). In determining whether torture is more likely than not, the agency must consider "all evidence relevant to the possibility of future torture . . . including, but not limited to:

(i)     Evidence of past torture inflicted upon the applicant;

(ii)    Evidence that the applicant could relocate to a part of the country where he or she is not likely to be tortured;

3

(iii)    Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv)    Other relevant information regarding conditions in the country of removal."

*Id.* § 1208.16(c)(3). "A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene." *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007); *see also* 8 C.F.R. § 1208.18(a)(7). Government acquiescence occurs when an official "acting under color of law" and "clothed with the authority of [the] law" instigates, acquiesces, or "remain[s] willfully blind" to torture. *Garcia-Aranda v. Garland*, 53 F.4th 752, 759–60 (2d Cir. 2022) (quotation marks omitted).

The record does not compel a conclusion contrary to the agency's that, prior to the state of exception, Salinas Orellana failed to demonstrate that it was "more likely than not" that he would be tortured by former gang members or government officials, or that an official would acquiesce to his torture. Although he was abused or tortured in the past while imprisoned for crimes, he also testified that prison officials protected him from gang violence and stopped beating him after he left the gang and converted to Christianity, and there was country conditions evidence that gangs do not target former members who have left gang

4

life on account of genuine religious beliefs, that the Salvadoran government was cracking down on gang violence, that former gang members have successfully created and run businesses employing other former gang members, and that the government had arrested, but then released without charges, former gang members, like Salinas Orellana, who have tattoos. *See* Certified Administrative Record (CAR) at 359–60, 362, 527–29 (Reuters Article), 531–34 (Human Rights Watch article), 536–40 (Associated Press article), 543–54 (Reuters Article).

The U.S. State Department's 2020 Country Report on Human Rights Practices reported allegations of unlawful killings of suspected gang members by security forces—some of which were investigated—among other general human rights abuses, as well as arbitrary arrests of suspected gang members, but also stated that the government generally respects the ability of a person to challenge such an arrest. *Id.* at 805–06. The report reflected that the government arrested a former defense minister and issued a warrant for a former president for negotiating with gangs during a truce, indicating that the government is attacking corrupt officials who collude with gangs. *Id.* at 679.

While there is evidence that Salinas Orellana may be targeted by members of his former gang for leaving or by Salvadoran law enforcement as a suspected gang member, there also is evidence that he will not be a target given that he has

5

left the gang and become a Christian, or that any arrest or detention would be short-lived because he has left the gang. In sum, review of the original record before the IJ does not compel a conclusion that Salinas Orellana will "more likely than not" be tortured. 8 C.F.R. § 1208.16(c)(2); *Quintanilla-Mejia*, 3 F.4th at 593–94 ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled a[] . . . finding different from that reached by the agency.").

Salinas Orellana also asserts that the agency violated his due process rights and did not provide a fair hearing. He largely objects to how the agency weighed the evidence, which is generally an issue of agency discretion. *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence."); *Xiao Ji Chen v. U.S. Dept. of Just.*, 471 F.3d 315, 341 (2d Cir. 2006) (An IJ "need not enumerate and evaluate on the record each piece of evidence, item by item"). It was his burden to demonstrate that he would more likely than not be subject to torture. *Quintanilla-Mejia*, 3 F.4th at 592. He has not shown how he was "denied a full and fair opportunity to present [his] claims or that the IJ or BIA otherwise deprived [him] of fundamental fairness." *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (quotation marks omitted). We find no merit to his claim of prejudice based on

6

the IJ's statements about past torture because the BIA did not rely on them. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." (quotation marks omitted)); *Xue Hong Yang*, 426 F.3d at 522–23.

For the above reasons, we deny the lead petition for review.

**II.     Consolidated petition, 2d Cir. 24-1873: Denial of Reopening**

We review the BIA's denial of a motion to reopen for abuse of discretion, "mindful that motions to reopen 'are disfavored.'" *Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006) (quoting *I.N.S. v. Doherty*, 502 U.S. 314, 322–23 (1992)). A "motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B).

As a threshold matter, Salinas Orellana asks us to delineate the proper standard for motions to reopen. In denying reopening, the BIA concluded that Salinas Orellana's new evidence did not support his motion to reopen under either of two standards—considering both whether his new evidence would "likely . . . change the outcome of [the] proceedings," and whether it showed a "reasonable likelihood of success on the merits." CAR at 2.

7

The Supreme Court has identified "at least three independent grounds" on which reopening might be denied: (1) "failure to establish a prima facie case for the relief sought," (2) "failure to introduce previously unavailable, material evidence," and (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief" requested. *Doherty*, 502 U.S. at 323 (quotation marks omitted). We have held that an applicant like Salinas Orellana who seeks to reopen based on previously unavailable evidence carries "the 'heavy burden' of demonstrating that the proffered new evidence would likely alter the result in h[is] case." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168 (2d Cir. 2008); *see also Paucaur v. Garland*, 84 F.4th 71, 79–80 (2d Cir. 2023) (distinguishing standard for prejudice requirement in motions to reopen based on ineffective assistance of counsel). So the question here is whether Salinas Orellana's new country conditions evidence would likely alter the result in the case. *See Jian Hui Shao*, 546 F.3d at 168.

Turning to the merits of the denial of reopening, Salinas Orellana argued that reopening was warranted given his new evidence concerning the Salvadoran government's "State of Exception," enacted in late March 2022, which, he contends, targets both current and former gang members. He submitted an updated expert affidavit as well as the 2022 State Department Human Rights

8

Report for El Salvador and a Human Rights Watch article. *See* CAR at 109–24 (State Dep't Report), 126–202 (Human Rights Watch). Both the State Department and Human Rights Watch described the state of exception and the resulting arbitrary arrests of individuals suspected of gang involvement, invasion of homes, unfair judicial procedures, and beatings, deaths, and disappearances of detainees. *Id.* at 109, 115, 171, 191–96. Both emphasized the overcrowded prisons because of the state of exception, including instances of 80 detainees held in cells built for 12, leaving no room to lie down. *Id.* at 114–15, 132, 182–84. Both reveal torture of detainees, including waterboarding, being forced to kneel in the sun for two hours, and deprivation of food and water. *Id.* at 109–10, 184–91. And both described how the state of exception peeled away protections for suspected gang members, including suspending the right to legal defense, the requirement that detainees be told of the reason for their arrest, and the requirement for warrants prior to arrests or entering homes. *Id.* at 109, 116, 130, 133, 173.

As noted above, Salinas Orellana must show that he "more likely than not" will be tortured by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). To show that torture is "more likely than not," he "must establish that there is greater than a fifty percent chance . . . that he will be tortured upon return to his . . . country of origin." *Mu-Xing Wang v. Ashcroft*,

9

320 F.3d 130, 144 n.20 (2d Cir. 2003). "It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (quotation marks omitted).

Assuming, as the BIA apparently did, that Salinas Orellana would likely be arrested and detained upon return to El Salvador, the question before us is whether Salinas Orellana established a likelihood of torture in prison such that it would alter the outcome of his CAT claim. *Id.* The BIA concluded that he had not shown that he was likely to be tortured as a detainee or that prison conditions described were created or maintained with intent to torture.

While we have rejected CAT claims based solely on harsh prison conditions that arise due to lack of resources as opposed to a specific intent by the torturer to inflict severe pain and suffering, we have also recognized the possibility that "petitioners with certain histories, characteristics, or medical conditions are more likely to be targeted not only with these individual acts [of abuse] but also with particularly harsh conditions of confinement." *Pierre*, 502 F.3d at 122. Salinas Orellana could establish torture based on harsh prison conditions, then, by showing that Salvadoran officials intend the overcrowded and harsh prison conditions to inflict pain and suffering, that the conditions would likely rise to the

level of torture, and that he is more likely than not to face such pain and suffering in prison. *Id.*; *see Savchuck*, 518 F.3d at 123. The BIA determined that he had not offered evidence of such intent, but in so determining, may have overlooked evidence of intent to torture.

"[W]e presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise," *Xiao Ji Chen*, 471 F.3d at 336 n.17, but the BIA has an obligation to consider the record as a whole when adjudicating a motion to reopen, *Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 97 (2d Cir. 2001), and may exceed its discretion if it fails to completely address country conditions, *Poradisova v. Gonzales*, 420 F.3d 70, 78, 81–82 (2d Cir. 2005).

Here, the 2022 State Department report referenced the Salvadoran government's social media statements issued at the start of the state of exception that it considered the "overcrowded prison conditions and lack of adequate food" as "appropriate treatment for gang members." CAR at 114. The Director of Prisons is quoted saying that "[n]o gang member will ever leave prison again" and that, even if released, a gang member has "already committed a crime" and will be rearrested as a gang member. *Id.* at 80. These statements provide some evidence that the Salvadoran government is intentionally creating or at least refusing to ameliorate prison conditions and indefinite detention to inflict pain

11

and suffering on perceived gang members. *See Pierre*, 502 F.3d at 121 (holding that "[b]arbaric prison conditions might constitute torture if they cause severe pain or suffering and if circumstances indicate that the intent of the authorities in causing the severity of pain and suffering (over and above the discomforts incident to confinement in that time and place) is to illicitly discriminate, punish, coerce confessions, intimidate, or the like").

Likewise, in addition to evidence of exceptionally harsh conditions of confinement, the country conditions evidence reflects that intentional acts of abuse in the prisons (as distinct from generally harsh conditions of confinement) may be widespread. An Amnesty International report cited by Salinas Orellana's expert documented 132 detainee deaths as of March 2023, and the expert cited data suggesting this significantly underreported the actual number. CAR at 83–84. The 2022 State Department Report references reports that 35 detainees died from "causes such as strangulation, blunt force trauma, or other causes that could indicate torture or mistreatment." *Id.* at 115. Salinas Orellana's expert identified testimony of an individual who was wrongly detained that prison conditions included electrical shocks, and he routinely witnessed abuse and torture by guards. *Id.* at 85; *see also id.* at 184 (Human Rights Watch Report documenting reports from eight people released from prison of torture in some prisons,

including beatings and waterboarding); *id.* at 187 (describing report of detainees being dunked in barrels of ice water); *id.* at 188–89 (describing report of detainees being forced to kneel for hours in the hot sun and to squat multiple times while naked, and being regularly beaten, kicked, and teargassed).

Because there is at least some evidence that intentional abuse is widespread and that the extremely harsh conditions of confinement are intentionally punitive, we remand to ensure that the BIA has considered that evidence in the first instance. *See Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) (remanding where the agency "overlooked key evidence and mischaracterized the record"). We do not express a view as to the merits of the CAT claim, but remand for the BIA to consider the entirety of the evidence presented on reopening in the first instance to determine whether it would likely alter the outcome of the CAT claim. *See id.*; *Savchuck*, 518 F.3d at 123.

For the foregoing reasons, the lead petition for review is DENIED, the consolidated petition for review is GRANTED, and the petition is REMANDED to the BIA for further proceedings consistent with this order. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

13